# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GERALD L. POLZIN,

                Petitioner,

      v.                                 Case No. 11-C-714

MICHAEL BAENEN,

                Respondent.

## DECISION AND ORDER

On July 27, 2011, Gerald Polzin filed this petition pursuant to 28 U.S.C. § 2254, alleging that his sentence was imposed in violation of the Constitution. Polzin is currently incarcerated at Green Bay Correctional Institution for second degree sexual assault of a child. Polzin's original petition contained multiple grounds in which he alleged that his custody is unlawful. The Court gave Polzin leave to proceed on only one of his claims, that his custody is unlawful because during the sentencing phase the prosecutor suppressed evidence in violation of *Brady*,[1] in an order (ECF No. 6) on August 23, 2011. The case is before me now for resolution. For the reasons discussed herein, Polzin's petition will be denied and the case dismissed.

## BACKGROUND

Originally the State had charged Polzin with twenty-two counts of sex offenses involving two children. Polzin ultimately pled guilty to five counts of second degree sexual assault of a child and one count of sexual exploitation of a child.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

At Polzin's sentencing hearing, the prosecutor told the court that Polzin would be presenting it with "excuses" including claims that, as a young child, an uncle sexually abused him. (ECF No. 12-19 at 21–22.) The prosecutor told the court:

> We've actually looked into that matter based upon first hearing about that with the state's presentence investigation that was filed with the court I think in July, beginning of July of this year. This individual is a decorated retired law enforcement officer with 18 years of law enforcement experience in Ozaukee County.
>
> The Department of Criminal Investigation and the special agent here looked into this matter, investigated it, spoke with this individual several times, the uncle. I spoke with this individual. There's been no merit whatsoever regarding these allegations, nor did the defendant nor his mother or any other family member ever report this. So if they've known about this for a period of time, they've never reported it, despite the fact that a statute of limitations might be past.

(*Id.* at 22.) The prosecutor went on to point out specific details in Polzin's claims of abuse that he believed to be false. (*Id.* at 22–24.)

Despite the prosecutor's position, the circuit court did not agree that Polzin's claims of abuse were false. Rather, it treated Polzin's claims of childhood abuse to be "more probable than not" and expressly considered those claims to be mitigating factors in its sentencing decision:

> In comparison to other considerations, including the manifest seriousness and gravity of the offenses, the multiplicity of offenses, the manipulation associated with the offenses, the use of videotaping to further the offenses . . . it doesn't weigh as heavily as those things, but it weighs and it matters, and it's a mitigating circumstance for reasons that have to do with the fact that at least we start the process of what might be some rehabilitation with an understanding of the place from whence this tendency and this lack of recognition of human boundaries comes.

(*Id.* at 123–24.)

Polzin's counsel filed a no-merit report on direct appeal. (ECF No. 12-2.) In that report, Polzin's counsel considered whether there was a violation regarding Polzin's due process right to

2

be sentenced based on accurate information under *United States v. Tucker*, 404 U.S. 443, 448 (1972). (*Id.*) His counsel concluded that such a claim was without merit because even if the prosecutor's statements were false, the circuit court clearly did not rely on them. (*Id.*) Polzin also filed a response to the no-merit report. (ECF No. 21-1.) He asserted multiple constitutional violations based on the state's investigation into Polzin's claims of childhood sexual abuse, including "abuse of process" and "outrageous government conduct" in covering up alleged abuse by Polzin's uncle, a former member of the Appleton police department. (*Id.* at 17–20.) Polzin also provided an amendment to his no-merit response in which he charged the state with violating state discovery rules in failing to turn over the alleged report and reiterated his argument that "the State fabricated the investigation and provided false facts" to conceal Polzin's childhood sex abuse. (ECF No. 21-1 at 3.)

The court of appeals determined those arguments were without merit, concluding that "[a]ny dispute over whether Polzin had been the victim of sexual assault as a child was resolved in Polzin's favor and the court specifically identified Polzin's childhood abuse as a mitigating factor." (ECF No. 12-3 at 6.) The court wrote:

> Polzin also contends that the failure to prosecute his uncle, combined with the stated disbelief in Polzin's claim, is tantamount to an abuse of process and outrageous governmental conduct. We are not persuaded. Rather than suffering retaliation for disclosing claims of childhood abuse, Polzin's claimed victimization was considered to be a mitigating factor at sentencing. The prosecutor's stated disbelief of Polzin's claim was not a form of cruel and unusual punishment or outrageous governmental conduct, especially where Polzin had raised the claim during the presentence investigation. If anything, it appears the prosecutor's comments may be characterized as nothing more than zealous advocacy, believing that Polzin had fabricated the abuse allegation to garner sympathy at sentencing.

(*Id.* at 6–7.)

3

In a subsequent post-conviction proceeding, Polzin again argued to the court of appeals about violations of due process and "outrageous government conduct." (ECF No. 12-6 at 25.) He claimed the state "fabricat[ed] facts" as to Polzin's childhood abuse in an attempt to conceal the abuse and to take "deliberate, calculated actions . . . to intimidate, humiliate and degrade Polzin." (*Id.* at 26.) He also again reasserted his outrageous government conduct argument, invoking *United States v. Russell*, 411 U.S. 423 (1973) for support of his position that the government violated his constitutional rights in an attempt "to conceal Polzin's childhood abuse from the court, and to intimidate, humiliate, and degrade Polzin in front of the court, public and media." (*Id.* at 27.) The court of appeals declined to address those arguments, concluding that those claims were identical to the claims it had rejected in the no-merit proceedings. (ECF No. 12-9 at 8.)

## ANALYSIS

Polzin's petition is covered by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376–77 (2000). The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

As a preliminary matter, a federal court may not grant a petition for a writ of habeas corpus unless the "applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

4

§ 2254(b)(1)(A). This requires that the petitioner has "fully and fairly presented his claims to the state appellate courts," thereby giving the courts a "meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). Fair presentment requires that the petitioner present the state courts with the operative facts and legal principles governing his claim. *Picard v. Connor*, 404 U.S. 270, 277 (1971). With respect to the "operative facts," it is not enough that all the facts necessary to support the federal constitutional claim were before the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*). The habeas petitioner must also have "'fairly presented'" to the state courts the "'substance'" of his federal habeas claim. *Id.* (citing *Picard*, 404 U.S. at 275).

In examining whether a petitioner has fairly presented his federal claim to the state courts, a district court should examine:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (quoted sources omitted).

"If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). In order for this court to address a procedurally defaulted claim on its merits, the petitioner must either show cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result unless the court hears the claim. *See id.* A fundamental miscarriage of justice occurs when a "constitutional violation has probably

5

resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Respondent contends Polzin failed to present a *Brady* claim to the state courts. Certainly, Polzin never invoked *Brady* or its progeny (or state cases employing the *Brady* analysis). *See, e.g.*, *Cone v. Bell*, 556 U.S. 449 (2009); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Strickler v. Greene*, 527 U.S. 263 (1999); *United States v. Bagley*, 473 U.S. 667 (1985). Rather, Polzin framed the claim to assert that the government put forth false evidence at sentencing and in doing so engaged in "outrageous conduct." While a direct citation to *Brady* was not required, Polzin did not addresses the analytical tests under *Brady* or raise any issues relating to favorable evidence suppressed by the State resulting in prejudice. Polzin has already completed a round of direct appeal and a round of post-conviction relief, and thus he is procedurally barred from seeking such relief in state courts now absent a "sufficient reason." *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157. 164 (1994) (stating that absent a "sufficient reason" defendants must raise all issues for review on a single direct appeal). Polzin has failed to provide such a sufficient reason and thus he has technically exhausted but procedurally defaulted on this claim, precluding this court from reviewing it. *See Woodford*, 548 U.S. at 93.

Even assuming Polzin did raise *Brady* issues before the state court, through his claims of outrageous government conduct, his petition fails on the merits. The state's suppression of evidence favorable to a criminal defendant violates due process if the evidence is material either to guilt or to punishment. *Brady*, 373 U.S. at 87. To establish a Brady violation, the defendant must show "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

6

inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281–82 (1999). Prejudice encompasses the materiality requirement of Brady so that the defendant is not prejudiced unless "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). In other words, evidence is material — and a Brady violation occurs — when "'the cumulative effect of all such evidence suppressed by the government . . . raises a reasonable probability that its disclosure would have produced a different result.'" *Crivens v. Roth*, 172 F.3d 991, 996 (7th Cir. 1999) (quoting *Kyles*, 514 U.S. at 421–22).

"AEDPA's deferential standard of review applies only to claims that were 'adjudicated on the merits in state court proceedings.'" *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2000) (quoting 28 U.S.C. § 2254(d)). As noted above, as there was no explicit *Brady* claim before it, the court did not apply the *Brady* standard to its determination of facts. Rather, it considered Polzin's claims that he was sentenced under false information and that the prosecutor's stated disbelief in Polzin's claim of childhood abuse was an abuse of process and outrageous government conduct. (ECF No. 12-3 at 5–7.) It resolved those issues with the finding that the sentencing court expressly resolved the question of whether Polzin had been abused as a child in Polzin's favor, that it had treated it as mitigating evidence in its sentencing considerations, and imposed a sentence within the maximum limits allowed. (*Id.*)

When a state court addresses a petitioner's federal claim in the context of resolving a different issue, the federal claim can be considered to have been adjudicated on the merits and entitled to deferential review under § 2254(d)(a). *See, e.g.*, *Sturgeon*, 552 F.3d at 611–12 (AEDPA standard applied where state court determined issue within context of ineffective assistance of

7

counsel claim). Under the deferential standard of review, "'the state court's factual determinations are presumed to be correct' — a presumption that can be rebutted only by clear and convincing evidence; the 'unreasonable application prong of AEDPA in particular is difficult to show.'" *Sturgeon*, 552 F.3d at 612 (quoting *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005) (brackets omitted)). "Unreasonable in this context means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Id.* (quoting *Woods*, 430 F.3d at 816–17).

Here, the Wisconsin Court of Appeals reviewed the sentencing hearing and observed that "[a]ny dispute over whether Polzin had been the victim of sexual assault as a child was resolved in Polzin's favor and the court specifically identified Polzin's childhood abuse as a mitigating factor." (ECF No. 12-3 at 6.) It concluded that Polzin's claim — that the court relied on false information — was without merit. Likewise, Polzin could not show that he suffered retaliation based on his claim of childhood abuse or on the prosecutor's stated disbelief of that claim. (*Id.* at 7.) Moreover, in light of the *Brady* materiality standard, that determination reasonably supports the conclusion that Polzin did not raise a reasonable probability that disclosure of the State's investigation would have produced a different sentencing result. In sum, the Wisconsin Court of Appeals' decision was neither an unreasonable determination of the facts, nor an unreasonable application of those facts to the *Brady* materiality standard.

Even assuming, *arguendo*, the de novo standard of review applied, Polzin's claim would still fail. He cannot demonstrate the allegedly suppressed information was exculpatory in any way and he cannot demonstrate prejudice. As previously mentioned, in June 2007, the Outagamie County District Attorney's office filed with the court a report by a State Department of Criminal Investigations agent, Kust. (ECF No. 12-4 at 58.) The office explained that Polzin's prosecution

was not handled by the DA's office but by a special prosecutor, who was at that point in private practice. (*Id.*) However, in an attempt to find the alleged report that Polzin was seeking, the DA's office contacted Kust, who prepared a report explaining the investigation that had been made into Polzin's claims of abuse. (*Id.*) Kust wrote that DCI had first learned of Polzin's claims of assault when he was in the Outagamie County Jail and made monitored calls to family alleging that a family member had abused him when he was a child. (ECF No. 12-4 at 59.) Kust noted Polzin never named the abuser but indicated the abuser was a family member who had worked for the Appleton police department. (*Id.*) Despite attempts by DCI to speak with Polzin and contact his family regarding the abuse, neither Polzin nor his family responded to DCI's requests. (*Id.*)

Based on the information it had, DCI identified the alleged abuser, whom it referred to as "FM" in the report. (*Id.*) DCI conducted background checks of FM, interviewed him, and interviewed an ex-spouse, all of whom provided no evidence substantiating Polzin's allegations that FM had abused him as a child. (*Id.*) FM denied committing any abuse. (*Id.*) He had no criminal record and no record of discipline in his law enforcement career. (*Id.*) A search of FM's computer revealed nothing suggesting FM had an inappropriate interest in children and FM's ex-spouse had not observed or known FM to engage in inappropriate contact with or obsess over children while they were married. (*Id.*) The investigator thought FM was forthcoming and cooperative in interviews. (*Id.*) In sum, nothing in the DCI investigation suggested that FM had abused Polzin as a child or that FM had inappropriate contacts or obsessions with children. Accordingly, Polzin cannot demonstrate that the report — to the extent it was suppressed — was exculpatory in any way.

Polzin similarly cannot demonstrate that prejudice ensued based on the prosecutor's failure to disclose the evidence at sentencing. Polzin is not claiming that the undisclosed evidence would

have placed doubt on the verdict but essentially that the evidence would have mitigated against the length of sentence that he received. But as mentioned previously, the circuit court expressly said it accepted Polzin's claims of childhood abuse "as established as more probable than not" and that the information was a "mitigating circumstance" for the court to weigh in its sentencing decision. (ECF No. 12-19 at 123–24.) Ultimately, the circuit court sentenced Polzin to 30 years initial confinement and 15 years of extended supervision on five of the charges; on the sixth charge the court imposed probation with a withheld sentence of 31 years. (ECF No. 12-1.) Each of the charges to which Polzin pled are designated as Class C felonies, each of which carries a maximum penalty of 40 years imprisonment and a $100,000 fine. Wis. Stat. § 939.50. Polzin's sentences were accordingly imposed well within the maximum sentences provided by law. Polzin cannot demonstrate that releasing the non-exculpatory report to the court was reasonably likely to have resulted in a lesser sentence. In sum, Polzin cannot demonstrate he is entitled to habeas relief, even under a standard of de novo review.

Finally, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may "only issue if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's

underlying constitutional claim, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Polzin's petition fails on multiple grounds and consequently I cannot say reasonable jurists would find it debatable.

## CONCLUSION

For the reasons given above, I conclude Polzin failed to exhaust his *Brady* claim at the state court level. Alternatively, his *Brady* claim fails on the merits, even under the de novo standard. Polzin's petition is DENIED and the case DISMISSED. The certificate of appealability is also denied. The clerk is directed to enter judgment in favor of the Respondent.

Dated this 13th day of June, 2012.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

11